In re ESTATE of Ernest C. DICKSON, Deceased.

Mabel T. DICKSON, Appellant,

v.

Nancy K. MINTZ, Appellee.

No. 88–1246.

District of Columbia Court of Appeals.

Submitted May 4, 1989.
Decided June 2, 1989.

---

John C. Floyd, III, was on the brief for appellant.

Kenneth I. Juster, with whom Joseph G. Poluka, Washington, D.C., was on the brief, for appellee.

Before FERREN, BELSON and SCHWELB, Associate Judges.

FERREN, Associate Judge:

Appellee, Nancy K. Mintz, the successor personal representative of the estate of Ernest C. Dickson, filed a petition for authority to settle litigation pursuant to D.C. Code § 20–742 (1981). Appellant, Mabel T. Dickson, a beneficiary of the estate, objected to the settlement. The trial court held a *hearing* and granted the petition. We conclude the trial court did not abuse its discretion, and, accordingly, we affirm.

I.

Ernest Dickson died testate in 1982, leaving his wife, appellant, a life estate in two pieces of property: a house at 903 U Street, N.W., and the "beach property." The "beach property" is located on Back Creek in Annapolis, Maryland, and has been improved with a marina, boat slips, and three buildings. The property has an estimated value of approximately $1.2 million. Joseph Greene claimed he has an option to buy the beach property. Greene filed a document, captioned "Option to Purchase," with the land records of Anne Arundel County, Maryland, on July 10, 1981. This document, bearing the signatures of Ernest and Mabel Dickson, gives Greene the right to purchase the beach property for $300,000 by paying $30,000 at the time the option is exercised and giving a note for $270,000. The option recites that Greene paid the Dicksons $100 for the option. Greene has produced a check for $100 endorsed by Mr. and Mrs. Ernest Dickson deposited to Ernest Dickson's business account.

In 1985, Greene contacted the personal representative and sought to exercise the option. The first personal representative, appellant Dickson, and the successor personal representative, appellee Mintz, have both refused to convey the land. On February 7, 1986, Greene sued the personal representative for conveyance of the land or, alternatively, for money damages of $1.2 million. On July 18, 1986, he amended his suit to add the successor personal representative, who has defended against the suit, raising numerous defenses and conducting discovery.

Shortly before trial, appellee and Greene worked out a settlement whereby Greene would drop his claims to the beach property in exchange for $100,000 cash plus the property located at 903 U Street, N.W., valued at $68,000. Because the litigation involved real estate, appellee filed a petition for authority to settle the case under D.C.Code § 20–742(a) and (b) (1981). Appellee asserted that the settlement was in the estate's best interest because of the uncertainty of winning the suit, as well as

the need to assure solvency of an estate that otherwise had insufficient liquid assets to pay the estate taxes and other obligations. All of the estate beneficiaries except Mrs. Dickson approved the settlement.

Appellant Dickson filed an opposition to the settlement. She generally opposed any settlement and specifically argued (1) her husband would not have sold the land; (2) her husband either "was enfeebled in both mind, body and spirit" or had Alzheimer's disease on the date the option was signed; and (3) the settlement was too high because the successor personal representative had undervalued the U Street property. Mrs. Dickson also asked for more time to examine the tax records and to conduct independent appraisals of the properties.

On June 2, 1988, the trial court held a hearing on the petition. Mrs. Dickson raised two additional arguments: she had not signed the option, and the option was not notarized as required by Maryland law. In response to these arguments and to those raised in Mrs. Dickson's opposition, appellee proffered that there was very little medical evidence that Mr. Dickson suffered from a mental disability and that Mrs. Dickson had testified in her own deposition that her husband did not suffer from any mental problems. Appellee further proffered that Mrs. Dickson had testified on deposition that she had signed the option. Appellee added that the estate had hired a handwriting expert who had opined that the signatures of Ernest and Mabel Dickson on the option and on the check supporting the option were authentic. Appellee also proffered that, at the time the option was signed in 1980, the value of the property was approximately $360,000 and, therefore, that the option price had not been inappropriate. In contrast, according to appellee, at the time of the settlement the U Street property had an appraised value of $68,000, and the beach property had an appraised value of $1.15 million. Appellee also detailed the various defenses she had considered and her conclusion that the settlement was in the estate's best interests. Appellee explained that Greene would not accept cash in lieu of the U Street property and that the estate had no other properties to exchange. After the hearing, appellee filed a notice of additional filing which included the successor personal representative's affidavit that she had examined the option and had found it contained a raised notary seal. Mrs. Dickson also filed a supplemental pleading which included eight written statements by additional witnesses, none of which contributed materially to Mrs. Dickson's objections.

The trial court granted the petition for authorization to settle litigation. The court found that the litigation exposed the estate to substantial economic loss and that the likelihood of success was uncertain. The court also found that the successor personal representative had explored Mrs. Dickson's reasons for opposing the settlement and had found them to be without merit. The court described these reasons and the successor personal representative's responses to them. The court then concluded: "the proposed settlement, which would assure that the estate retains the extremely valuable property in Maryland, would be in the best interest of the estate."

## II.

On appeal, Mrs. Dickson challenges the trial court's order granting the petition for authority to settle litigation. She argues she was deprived of her property interests without due process and that the settlement favored the other heirs and thus was "not fair and an abuse of judicial discretion." Mrs. Dickson's due process claim has no merit. She was accorded a full hearing on her opposition to the petition. Mrs. Dickson's other claim—that the settlement which preserves the beach property, the main asset of the estate, was unfair—is meritless. In the first place, although the settlement resolves the Greene litigation, it does not fix the rights of the various heirs to the estate and thus cannot be said to favor other heirs over Mrs. Dickson. We therefore turn to the settlement itself.

█ We have not previously determined the standard by which we review trial court orders granting petitions for authority to settle litigation under D.C.Code § 20–742

**334**

(1981). Following the standard adopted in other jurisdictions, we now hold that we will uphold the trial court's order unless it is an abuse of discretion. *See In re Estate of Green,* 145 Cal.App.2d 25, 26, 301 P.2d 889, 890 (1956); *Security Ins. Co. v. Estate of Stillson,* 397 So.2d 1206, 1207 (Fla.Dist. Ct.App.1981); *In re Estate of Stahl,* 226 Kan. 48, 54, 596 P.2d 121, 127 (1979); *In re Estate of Dahle,* 384 N.W.2d 556, 559 (Minn.App.1986); *Wachovia Bank & Trust Co. v. Waddell,* 234 N.C. 454, 458, 67 S.E. 2d 651, 655 (1951) (approval of settlement rested in "sound discretion" of trial court); *cf. DeMarco v. Kertz,* 80 U.S. App. D.C. 204, 205, 151 F.2d 305, 306 (1945) (in approving sale of real estate by executor, trial court exercises "wise judicial discretion").

■ In deciding whether to grant the petition to settle, the trial court must determine that the settlement is in the best interest of the estate, *see In re Estate of Stahl,* 226 Kan. at 52, 596 P.2d at 126; *Edelstein v. Old Colony Trust Co.,* 336 Mass. 659, 662–66, 147 N.E.2d 193, 197–98 (1958); *In re Estate of Dahle,* 384 N.W.2d at 559; *Wachovia Bank,* 234 N.C. at 458, 67 S.E.2d at 655; *Wilder v. Mossler,* 583 S.W.2d 664, 666 (Tex.Civ.App.1979), and that the personal representative has fulfilled his or her fiduciary duty to act as a "prudent person," *see* D.C.Code § 20–701(a) (1981); *see also In re Estate of Stahl,* 226 Kan. at 52, 596 P.2d at 126. In making these determinations, the court should consider, among other factors, the validity of the claim, *see In re Estate of Green,* 145 Cal.App.2d at 26–28, 301 P.2d at 890–91; *In re Estate of Dahle,* 384 N.W.2d at 560 (evidence substantiated claimant's claim), the personal representative's investigation of the claim, and the defenses to the claim, *see In re Estate of Green,* 145 Cal.App.2d at 28, 301 P.2d at 891; *In re Estate of Stahl,* 226 Kan. at 52, 596 P.2d at 126; *Edelstein,* 336 Mass. at 662, 147 N.E.2d at 197 (reasonable investigation of the matter in good faith), and the reasonableness of the compromise, *In re Estate of Dahle,* 384 N.W.2d at 559; *Wachovia Bank,* 234 N.C. at 458, 67 S.E.2d at 655.

We perceive no abuse of discretion in the trial court's ruling here. The court examined Mrs. Dickson's objections to the settlement, determined that the successor personal representative had considered each of them, and concluded that none offered a sure defense to the Greene litigation. In addition, the trial court considered the substantial risk to the estate posed by the suit, the reasonableness of the compromise, and the need for the estate to resolve the litigation so that the beach property could be sold and the estate's debts and taxes paid. The trial court concluded, finally, that the settlement was in the estate's best interest. The court, therefore, did its job properly.

*Affirmed.*